# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Bongards' Creameries, | Civil File No: _____ |
| Plaintiff, | |
| vs. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| Kerry Ingredients & Flavours, Mastertaste Inc., Kerry Inc., Kerry Biofunctional Ingredients Inc., Kerry Foods Inc., Kerry Proteins Inc., Kerry I&F Contracting Company, all d/b/a Kerry Ingredients & Flavours, | |
| Defendants. | |

Bongards' Creameries ("Bongards"), for its Complaint against the named defendants herein (hereinafter sometimes collectively referred to as "Kerry"), hereby states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages resulting from a food ingredient supplied by the defendants to Bongards which caused Bongards to recall from its customers or not ship to its customers hundreds of thousands of pounds of cheese contaminated with compounds that gave the cheese a poor flavor.

## PARTIES AND JURISDICTION

2. Bongards is a Minnesota corporation organized under the Minnesota Cooperative Statute Chapter 308A.

3.  On information and belief, one or more of the defendants operate as Kerry Ingredients & Flavours from a headquarters in Beloit, Wisconsin. Kerry identified itself to Bongards as "Kerry Ingredients & Flavours." Although "Kerry Ingredients & Flavours" has claimed in publicly filed documents to be a corporation incorporated in the State of Wisconsin, Bongards has found no record of such incorporation. To the extent that Kerry Ingredients & Flavours is not a separate entity, Kerry has never informed Bongards of the identity of the legal entity that has been dealing with Bongards.

4.  Mastertaste Inc. is an Illinois corporation, which is headquartered in Illinois. On information and belief, "Kerry Ingredients & Flavours" is an assumed name for Mastertaste Inc.

5.  On information and belief, Kerry Inc., Kerry Biofunctional Ingredients Inc., Kerry I&F Contracting Company, Kerry Foods Inc., and Kerry Proteins Inc. are all Delaware corporations headquartered in Wisconsin who have done business as "Kerry Ingredients & Flavours."

6.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000 and is between citizens of different states. Bongards is a citizen of Minnesota and the defendants are all citizens of states other than Minnesota.

7.  On information and belief, this Court has personal jurisdiction over Kerry because Kerry is registered to do business in Minnesota, continuously and purposefully does business in Minnesota, and supplied to Bongards in Minnesota the food ingredients at issue in this case which harmed Bongards in Minnesota.

8.  On information and belief, venue lies in this district pursuant to 28 U.S.C. §§ 1391(a) and (c).

2

9. From November 2009 through January 2010, Bongards purchased three truckloads of Kerry's Melocreme 3860L (invoices 20-405572, 20-407336, and 20-409875), which is a dry cream flavoring ingredient (the "Melocreme").

10. Portions of the Melocreme were defective in that they contained, among other things, poor or "off flavors" caused by phenolic compounds which caused the cheese in which it was used to have a taste repugnant to certain of the customers who consumed the cheese. Sensitivity to these off flavors caused by phenolic compounds is a known issue in the cheese industry. Food ingredient suppliers take steps to avoid having off flavors caused by phenolic compounds in their food ingredients.

11. Bongards paid Kerry for the Melocreme before Bongards knew of the defects in the Melocreme. Bongards discovered the problem when Bongards' largest customer complained to Bongards that its customers had reported bad tasting cheese products.

12. Bongards then received back from its customers over a hundred thousand pounds of cheese that had been contaminated by the Melocreme. The cheese contaminated by the Melocreme having off flavors caused by phenolic compounds will be referred to herein as the "Contaminated Cheese."

13. As soon as Bongards became aware of this problem, it notified Kerry. Representatives of Kerry who evaluated the Contaminated Cheese told Bongards that the Contaminated Cheese contained unacceptable levels of off flavors caused by phenolic compounds.

14. Bongards cooperated with Kerry in attempting to resolve the problem. Bongards mitigated its damages by selling as many units of the cheese containing the Melocreme as it could based on testing for flavor issues. After this mitigation, however, Bongards still had over

800,000 pounds of contaminated cheese in the packaging of Bongards' customers (much of Bongards' cheese is sold under "private labels" rather than under a "Bongards" label.) This cheese was shipped to Kerry and Kerry accepted it with full knowledge that Kerry could not sell or do anything with the cheese without first removing the labeling on the cheese.

15. Although Kerry acknowledges that unacceptable levels of off flavors caused by phenolic compounds in the Contaminated Cheese, Kerry has failed and refused to pay Bongards the over $1.3 million which Bongards has lost due to the contamination of the cheese.

## COUNT I
### (Breach of Implied Warranty of Merchantability)

16. Bongards re-alleges the preceding paragraphs of this Complaint.

17. Kerry made implied warranties that the Melocreme it sold to Bongards would be of merchantable quality and fit for the ordinary purposes for which the Melocreme was to be used.

18. Kerry breached these warranties, as portions of the Melocreme contained contaminated ingredients which resulted in the Contaminated Cheese.

19. As a result of Kerry's breach of the implied warranty of merchantability, Bongards has been damaged in an amount to be proven at trial, but believed to be in excess of $1.3 million.

## COUNT II
### (Breach of Implied Warranty of Fitness for a Particular Purpose)

20. Bongards re-alleges the preceding paragraphs of this Complaint.

21. Kerry made implied warranties of fitness for a particular purpose with respect to the Melocreme that it sold to Bongards.

22. Kerry knew or had reason to know that Bongards would use the Melocreme in cheese that would be eaten by consumers, but nevertheless supplied Melocreme unsuitable to those purposes, thereby breaching this warranty.

23. As a result of Kerry's breach of the implied warranty of fitness for a particular purpose, Bongards has been damaged in an amount to be proven at trial, but believed to be in excess of $1.3 million.

## COUNT III
### (Breach of Contract)

24. Bongards re-alleges the preceding paragraphs of this Complaint.

25. Under the contract between Bongards and Kerry, Kerry was to provide Bongards with unadulterated dry cream Melocreme 3860L.

26. Instead, Kerry sent Bongards Melocreme 3860L which was tainted with unacceptable levels of off flavors caused by phenolic compounds, thereby causing it to have a flavor that is repugnant to certain consumers.

27. This adulteration of the Melocreme 3860L was a breach of Bongards' contract with Kerry. As a result of the breach of contract, Bongards has been damaged in an amount to be proven at trial but believed to be in excess of $1.3 million.

WHEREFORE, Bongards prays for judgment in its favor in this matter on Counts I, II, and III of this Complaint in an amount to be proven at trial, along with its costs, attorneys' fees, expenses, and such other and further relief as this Court deems just and equitable.

Dated: May 14, 2010

GRAY, PLANT, MOOTY,
   MOOTY & BENNETT, P.A.

By: *John L Krenn* (signature)
John L. Krenn (MN ID 012493X)
Brian A. Dillon (MN ID 0386643)
500 IDS Center, 80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: (612) 632-3000
Facsimile: (612) 632-4444

**ATTORNEYS FOR PLAINTIFF**

GP:2779046 v1